SUPERIOR COURT 
 
 COMMONWEALTH v s. JULIUS HAMMOND-DESIR

 
 Docket:
 22-72
 
 
 Dates:
 October 24, 2024
 
 
 Present:
 Peter B. Krupp
 
 
 County:
 NORFOLK, ss.
 

 
 Keywords:
 SENTENCING MEMORANDUM
 
 

             Defendant Julius Hammond-Desir was convicted by a jury of first degree murder for killing Dijoun Beasley with deliberate premeditation inside the Forever 21 store in the South Shore Plaza mall in Braintree on January 22, 2022. The killing was unplanned, occasioned by a chance encounter, and impulsive; escalating in under 30 seconds from Mr. Hammond-Desir and Mr. Beasley crossing paths and seemingly exchanging glances and possibly words, to Mr.
Hammond-Desir shooting Mr. Beasley in the head. Defendant was also convicted of unlawful possession of a firearm and carrying a loaded firearm.
I.  Sentencing Options
            Ordinarily, the sentence for an adult convicted of murder in the first degree is life in prison without the possibility of parole. G.L. c. 265, § 2. The Supreme Judicial Court, however, recently ruled that life in prison without the possibility of parole is cruel or unusual punishment in violation of art. 26 of the Massachusetts Declaration of Rights when applied to defendants who were less than 21 years old at the time of the murder. Commonwealth v. Mattis, 493 Mass. 216, 222-235 (2024). In reaching this conclusion, the SJC looked to scientific studies about emerging adult neurobiology, which have found that
emerging adults (1) have a lack of impulse control similar to sixteen and seventeen year olds in emotionally arousing situations,
 
                                                            -1-
 
(2) are m ore prone to risk taking in pursuit of rewards than those under eighteen years and those over twenty-one years, (3) are more susceptible to peer influence than individuals over twenty-one years, and (4) have a greater capacity for change than older individuals due to the plasticity of their brains.
493 Mass. at 225 (emphasis added). Based on these and other factors, the SJC concluded that “our contemporary standards of decency do not support imposing life without parole sentences on emerging adults.” Id. at 230.
            Because Mr. Hammond-Desir was 19 years old at the time of the murder, and because he was convicted of murder in the first degree under the theory of deliberate premeditation, I must sentence him on Count 001 to life in prison, with the possibility of parole after 25, but not more than 30, years. Id. at 236-237, relying on G.L. c. 279, § 24.[1]
            On the conviction for unlawful possession of a firearm in violation of G.L. c. 269, § 10(a) (Count 003), Mr. Hammond-Desir faces a maximum sentence of 5 years in state prison or 2½ years in the house of correction, with a mandatory minimum sentence of 18 months in the house of correction. On the conviction for carrying a loaded firearm in violation of G.L. c. 269, § 10(n) (Count 002), Mr. Hammond-Desir must be sentenced to the house of correction for not more than 2½ years from and after the sentence for the violation of § 10(a). The firearm-related sentences may be run concurrent with, or consecutive to, the sentence imposed on the murder charge.
 
--------------------------------------------
[1]        Section 24, as amended a decade ago, requires parole eligibility at between 20 and 30 years, but establishes tiered parole eligibility depending on the theory of first degree murder. It mandates parole eligibility only after 30 years for murder committed with extreme atrocity and cruelty, and only after 25 years (but not more than 30 years) for murder committed with deliberate premeditation. G.L. c. 279, § 24, para. 2.
 
                                                            -2-
 
II.  The Reasons for the Court’s Sentence
            For the following reasons, I have sentenced defendant on Count 001 to life with the possibility of parole after 25 years;[2] on Count 003 to 2½ years in the house of correction, to run concurrently with the sentence on Count 001; and on Count 002 to 2½ years in the house of correction, to run consecutively to the sentence on Count 003 and concurrently with the sentence on Count 001.
            In imposing this sentence, I have considered the nature and seriousness of the crime (and need for punishment and deterrence), the factors animating the SJC’s decision in Mattis, and Mr.
Hammond-Desir’s particular background.
            As to the nature and seriousness of the crime, Mr. Hammond-Desir’s actions ended the life of Dijoun Beasley, a 26-year old man, who was much loved by his family and friends. The profound sadness at the loss of Mr. Beasley, and the fact that he will never be present for future life events, will be felt by his mother, his other family members, and his close friends for the rest of their lives. No parent should have to bury their child. For Ms. Dupree, who was there with Mr. Beasley and who tried to give aid to him after he was shot, the residual trauma will be at least as intense, as she also supports her young son who was present at the time of the shooting.
            The crime was also committed on a Saturday afternoon in a store selling young women’s clothing inside a well-trafficked shopping mall. The trauma for the employees, managers, and customers, who were present or even who heard about the shooting, and for the first responders, cannot be underestimated. Some employees of Forever21 could not return to work. The safety of a gathering place – a shopping mall – was shattered for many.
 
--------------------------------------------
 
[2]        Defendant will receive credit for time in custody since February 16, 2022.
 
                                                            -3-
 
            In Mattis, the SJC recognized that “in terms of impulse control, emerging adults are more similar to sixteen and seventeen year old juveniles than to older adults,” 493 Mass. at 225, and that emerging adults are more likely to engage in risky criminal behavior. Id. at 227. There is no question that this crime was brought on by a lack of impulse control. There was no planning. Mr. Hammond-Desir had no knowledge that he would run into Mr. Beasley in the mall or in the Forever21 store. Whatever the animosities, words exchanged, or other provocations about which I know almost nothing from the evidence at trial (or otherwise), this was a situation that escalated extremely quickly. It is a textbook case of a lack of impulse control,[3] and of engaging in risky behavior (carrying a loaded firearm in a shopping mall).
            I am also mindful of Mattis’s recognition that because of their incomplete brain development, emerging adults have a greater capacity to change than older adults. Id. at 228. Mr. Hammond-Desir’s background through 19 years was difficult and underscores the possibility for him to change. Mr. Hammond-Desir has had learning issues, required an individualized education plan since at least the 4th grade, and has a 10th grade education, although he has tried to get further education while he has been detained pretrial. After the age of four, he was taken from his mother at various times and was in and out of placements by the Department of Children and Families. He was also repeatedly the victim and a witness to instances of abuse and trauma, which resulted in him living without a permanent residence at various times from the age of 15. Mr. Hammond-Desir has never previously been convicted of any criminal offense.
 
--------------------------------------------
 
            [3]        While I fully credit the jury’s verdict, given the quick escalation of events over a matter of seconds, this is a case that could have also supported a verdict of murder in the second degree (i.e. murder without deliberate premeditation), which would have exposed defendant to a sentence of life in prison with the possibility of parole after not less than 15 years nor more than 25 years. G.L. c. 265, § 2(c); G.L. c. 279, § 24, para. 1.
 
                                                            -4-
 
            The sentence I impose is sufficient, but not greater than necessary to achieve the purposes of sentencing. It recognizes the seriousness of Mr. Hammond-Desir’s crime and the consequences of his irrational, irreversible choices inside the Forever21 store, but it also permits Mr. Hammond-Desir to mature, potentially to obtain education, and to seek out mentors in custody who can help him develop skills, self-knowledge, and personal insight; and to give him an opportunity through his actions while in custody to demonstrate that he can be a productive member of the community outside of prison someday.
@/s/Peter B. Krupp
Justice of the Superior Court
@October 24, 2024